AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

**FILED**

10/20/2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        vyc        DEPUTY

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   23MJ8793 |
| Red Apple iPhone | ) | |
| Model: Unknown | ) | |
| With no identifying numbers or features | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-1, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent-Intelligence Miguel Flores incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Border Patrol Agent-Intelligence Miguel Flores
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means).*

Date:    _____10/20/2023_____

City and state:   El Centro, California

_____
*Judge's signature*

HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

**ATTACHMENT A-1**
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**               Red Apple iPhone
Model: Unknown
With no identifying numbers or features
Seized from Yuvel Jailene GARCIA
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 19, 2023, up to and including September 19, 2023, and is limited to the following:

a.      tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.      tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.      tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.      tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.      tending to identify the user of, or persons with control over or access to, the Target Device;

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

**AFFIDAVIT**

I, Miguel Flores, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

**INTRODUCTION**

1.     I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**           Red Apple iPhone
                  Model: Unknown
                  With no identifying numbers or features
                  Seized from Yuvel Jailene GARCIA
                  **(Target Device #1)**

**A-2:**           One Black Smartphone
                  Model: Unknown
                  With no identifying numbers or features
                  Seized from Yuvel Jailene GARCIA
                  **(Target Device #2)**

**A-3:**           Black Huawei Cellphone
                  Model: Unknown
                  With no identifying numbers or features
                  Seized from Alma Delia PLANCARTE-Jaimes
                  **(Target Device #3)**

**A-4:**           Blue Samsung Cellphone
                  Model: Unknown
                  With no identifying numbers or features
                  Seized from Marco Antonio CARRILLO-Munoz
                  **(Target Device #4)**

as further described in Attachments A-1 to A-3, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.     The requested warrant relates to the investigation and prosecution of Yuvel Jailene GARCIA for transportation of illegal aliens Alma Delia PLANCARTE-Jaimes (PLANCARTE) and Marco Antonio CARRILLO-Munoz (CARRILLO) (collectively, the

"Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from GARCIA and the Material Witnesses on or about September 18, 2023, incident to the arrest of GARCIA and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.     Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4.     I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since December 4, 2006, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5.     I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of

undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.     The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to

make smuggling arrangements, receive instructions, and report their locations after crossing.

8.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

     a.     tending to indicate efforts to smuggle aliens from Mexico into the United States;

     b.     tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

     c.     tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

     d.     tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

     e.     tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10.    On September 18, 2023, Remote Video Surveillance System (RVSS) operators at the Calexico Border Patrol Station were conducting surveillance of the border area approximately 18 miles east of the Calexico Port of Entry. In this area, the All-American Canal (AAC) is approximately three quarters of a mile north of the International Boundary Fence (IBF). At approximately 11:32 a.m., a National Guard soldier working in the RVSS room observed a pair of suspected illegal aliens swimming northbound across the AAC and conceal themselves in the reeds of the AAC. BPA A. Pena arrived in the RVSS room and began observation of the suspected illegal aliens. BPA A. Pena observed that the pair of suspected illegal aliens were approximately two and one-half miles east of the Imperial Irrigation District's (I.I.D.) Drop 4. BPA A. Pena observed the pair of suspected illegal aliens exit the AAC and run northbound towards Highway 98.

11.    BPA A. Long-Garcia, who was operating a service-issued Small Unmanned Aerial System (drone), observed the suspected illegal aliens run northbound towards Highway 98 and stop a few yards south of Highway 98 and conceal themselves in some brush.  At approximately 12:24 pm, BPA J. Bourque, who was parked near the area on Highway 98 in an unmarked Service vehicle, observed a white-colored sedan, later identified as a 2012 Fiat 500 bearing California license plates, driving westbound on Highway 98. BPA J. Bourque observed the Fiat pull to the shoulder and stop in the area where the suspected illegal aliens were last observed hiding. BPA J. Bourque observed the suspected illegal aliens run and board the Fiat. The vehicle drove away eastbound on Highway 98. BPA J. Bourque relayed this information to agents in the field via service radio and followed the vehicle.  BPA D. Davalos communicated to Agents in the field that he would be setup along Highway 98 at the Caltrans equipment depot with a Vehicle Immobilization Device (VID).

12.     BPA J. Bourque drove his Service vehicle in behind the Fiat and began following it eastbound. BPA J. Bourque relayed to BPA A. Mills, who was driving a fully marked service vehicle, the position and direction of travel of the Fiat. BPA A. Mills observed the Fiat driving eastbound on Highway 98 and he drove his Service vehicle in behind the vehicle. While passing the Fiat, BPA J. Bourque relayed to BPA A. Mills that he would be at BPA D. Davalos' position with the intent to deploy a VID.

13.     As BPA A. Mills approached the location of BPA D. Davalos and BPA J. Bourque, he activated the emergency lights and siren of his marked service vehicle. BPA A. Mills observed that the Fiat's brake lights did not activate and instead the Fiat accelerated. BPA A. Mills also observed that the Fiat crossed the center line divide and drove in the middle of the roadway. BPA D. Davalos and BPA J. Bourque successfully deployed their VIDs into the roadway, which slowly deflated all four tires of the Fiat. With the tires deflating, BPA A. Mills observed the driver of the Fiat, later identified as GARCIA, continued to fail to yield eastbound along Highway 98. BPA A. Mills observed the Fiat enter the westbound lane of Highway 98 while driving eastbound and pass a semi-tractor trailer that was travelling eastbound. BPA A. Mills observed the Fiat drive over the Highway 98 overpass (also known as the East Y) and stop just south of Old Highway 80 after all of the tires were completely flat.

14.     BPA A. Mills and BPA J. Quintero approached the Fiat and identified themselves as United States Border Patrol Agents to GARCIA and the occupants of the vehicle. BPA J. Quintero instructed GARCIA to exit the driver seat of the Fiat, which she did. GARCIA was detained in handcuffs and placed in the rear of BPA A. Mills' Service vehicle. BPA J. Quintero conducted an immigration interview with GARCIA and determined that she is a United States Citizen. BPA A. Mills questioned the two passengers in the rear seat of the Fiat, later identified as Alma Delia PLANCARTE-Jaimes and Marco Antonio CARRILLO-Munoz, regarding their citizenship. BPA A. Mills determined that they were citizens of Mexico illegally present in the United States. GARCIA,

PLANCARTE, and CARRILLO were placed under arrest and were transported to the Calexico Border Patrol Station for further processing and interviews.

15. At the Border Patrol Station, GARCIA acknowledged her rights and stated she was willing to answer question without the presence of an attorney. GARCIA stated she is a United States Citizen. GARCIA stated she understood that she was arrested today for alien smuggling. GARCIA stated that she was to be paid $1,000.00 per alien that she smuggled.

16. Material Witness PLANCARTE stated that she is a citizen of Mexico. PLANCARTE stated she does not possess any immigration documents that would allow her to work or reside in the United States legally. PLANCARTE stated that her sister made the arrangements for her to be smuggled to the United States illegally for $9,000.00. PLANCARTE stated that she got into the back seat of the vehicle.

17. Material Witness CARRILLO stated he is a citizen of Mexico. CARRILLO stated that he does not possess any immigration documents that would allow him to work or reside in the United States legally. CARRILLO stated that a family member made the arrangements for him to be smuggled to the United States illegally for $7,000.00. CARRILLO stated that he got into the back seat of the vehicle.

18. During a search of the Fiat, BPA J. Quintero found a red iPhone (Target Device #1) on the floor of the Fiat's driver side. BPA J. Bourque observed a black purse in the side pocket of the driver side door and located a Black Smartphone (Target Device #2) inside the black purse. GARCIA was shown both Target Devices, claimed ownership of both phones, and the Target Devices were seized as evidence. During a search incident to arrest of the two Material Witnesses, SPBA Mills found that both had a cellphone in their possession. A black Huawei (Target Device #3) was found in PLANCARTE's brassiere and a blue Samsung (Target Device # 4) was located on CARRILLO's person inside his pants pocket. PLANCARTE and CARRILLO claimed ownership of their respective cell phones and the Target Devices were seized as evidence.

19.     I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement.  In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event.  Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts.  Given this, I respectfully request permission to search the Target Devices for data beginning on August 19, 2023, up to and including September 19, 2023, the day after the arrest of GARCIA and the Material Witnesses.

## METHODOLOGY

20.     It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and

record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21.     Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22.     Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

**CONCLUSION**

1

2        23.     Based on all the facts and circumstances described above, I believe that

3    probable cause exists to conclude that GARCIA and the Material Witnesses used the Target

4    Devices to facilitate the offense of alien smuggling. The Target Devices likely were used

5    to facilitate the offense by transmitting and storing data, specifically that described in

6    Attachment B, which constitutes evidence of violations of Title 8, United States Code,

7    Section 1324. I also believe that probable cause exists to believe that evidence of illegal

8    activity committed by GARCIA, the Material Witnesses, and others continues to exist on

9    the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

10

11        I swear the foregoing is true and correct to the best of my knowledge and belief.

12

13                                                    _____

14                                                    Miguel Flores
                                                      Border Patrol Agent-Intelligence
15                                                    United States Border Patrol

16

17        Attested to by the applicant in accordance with the requirements of Fed. R.

18    Crim. P. 4.1 by telephone on this 20th day of October, 2023.

19                                       8:16 a.m.

20    _____
      HON. LUPE RODRIGUEZ, JR.
21    UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

**ATTACHMENT A-1**
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**          Red Apple iPhone
               Model: Unknown
               With no identifying numbers or features
               Seized from Yuvel Jailene GARCIA
               **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**        One Black Smartphone
Model: Unknown
With no identifying numbers or features
Seized from Yuvel Jailene GARCIA
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**        Black Huawei Cellphone
Model: Unknown
With no identifying numbers or features
Seized from Alma Delia PLANCARTE-Jaimes
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4**:         Blue Samsung Cellphone
Model: Unknown
With no identifying numbers or features
Seized from Marco Antonio CARRILLO-Munoz
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 19, 2023, up to and including September 19, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.